390 P.2d 123

**Charles E. JENNINGS and Vina B. Jennings, his wife, Plaintiffs and Appellants,**

**v.**

**Melroy GRAHAM et al., Defendants and Respondents.**

**No. 9944.**

Supreme Court of Utah.

Feb. 11, 1964.

D. Eugene Livingston, E. J. Skeen, Salt Lake City, for plaintiffs and appellants.

Arthur H. Nielsen, Salt Lake City, Don Tibbs, Manti, for defendants and respondents.

HENRIOD, Chief Justice.

Appeal from a case tried to the court sounding in tort for unlawfully converting plaintiff's water, which case was dismissed by the trial court. Affirmed. Costs to defendants.

Plaintiffs urge that defendants unlawfully purloined their water, and based their contention on rights decreed under the so-called Cox decree.[1] For several hundred pages of transcript the trial court apparently and sympathetically struggled through a lot of repetition and possible irrelevance to the issue: An intentional wrongful conversion of an established water right, proclaimed as inviolate by a couple of water decisions of rather ancient vintage. Why a lot of the circumlocution, indulged, one wonders. Only issue was whether defendants intentionally stole plaintiffs' water.

The plaintiffs claim that the uncontradicted evidence shows that defendants did just that. A complete answer to this contention is that the defendants contradicted this assertion with their own testimony, punctuated throughout with indecision, admission of mistakes, and colored only with volunteer assertions that defendants took their water, without any substantial evidence to pinpoint the claimed variety of alleged peculations.

The complaint bottomed its claim on theft of water. On appeal, plaintiffs urge that the trial court erred in refusing to determine priorities. Although the question of priorities necessarily is involved in allocation of waters and any alleged wilful violation thereof may be subject to litigation, it appears from the record that the waters involved were being administered by a watermaster through an irrigation company in which both plaintiffs and defendants were shareholders, where the parties were delivered water by such watermaster and irrigation company. The trial court easily could have concluded, as it did, that none of the defendants intentionally and unlawfully placed obstacles in the stream with any design to injure plaintiffs or take unto himself water not belonging to him. There was some evidence that beavers or muskrats may have harbored such intent. Plaintiffs certainly did not sustain their burden of spotting specific acts by defendants to the contrary, but simply repeated more than once, as a conclusion, that these people had com-

1. See Richlands In. Co. v. Westview In. Co., 96 Utah 403, 80 P.2d 458 (1938).

mitted the alleged tortious conduct, without any believable or substantial proof substantiating the charges made.

Plaintiffs further contend that the trial court's findings that a previous decree, in which plaintiff stipulated as to respective water rights of the parties, had no bearing on this case. This contention could have merit although we doubt it in this particular case. The decree at least involved an admission by plaintiffs as to their correlative rights with defendants. Even so, this case strictly is one for rights in water alleged to be violated tortiously, not for a general adjudication of priorities under previous water decrees. The trial court could have decided as it did if such decree had not been presented. This much can be said for the decree alluded to: It reflected, by stipulation of the parties to which plaintiffs were signatories an agreement as to the amount of water each stipulant would obtain, and the record reflects no wilful violation of its terms.

■ Plaintiffs' third point on appeal is that the trial court erred in not appointing a water commissioner to distribute the waters of North or South Sanpitch Creek or Milburn Creek,—nobody seeming to know the precise appellation of this natural, erstwhile complacent stream concerned with the ages, not with humans, the stream apparently being content to rely on geologic and

natural eons, not the humanities. It seems to us that the reasonable and logical answer to this contention is that the trial court is not encumbered with any known statutory mandate to appoint umpires anent thefts of water, save that the court is charged to assess damages therefor when a given case arises, and to allocate waters to which litigants claim decreed rights,—not where the issue is whether neighborly epithet gives cause for an issue animus·furandi. The state engineer is charged with some sort of obligation to control the distribution of decreed water rights, but not to referee isolated instances of abuses between irritant combatants as to who did what in relation to whom,—a matter for the courts to hear in order to assess damages if any might be found.

■ This court.is cognizant of the importance of water to the individual pursuant of a claim thereto, and of the vigilance required of the state to protect every drop thereof for the general weal in this arid and water-impoverished state. But in this local altercation between the litigants here, we discern no substantial testimony or evidence that the trial court was obliged to believe, to the effect that defendants or either of them intentionally, wilfully or otherwise unlawfully hypothecated plaintiffs' water.

McDONOUGH, CALLISTER, CROCKETT and WADE, JJ., concur.